Madam Clerk, please call the last case of the day. Mr. Standa, you may proceed. I represent the appellant referred to as Cherrytree in this litigation, doing businesses making general contractors in Bradford, Illinois, a small general contracting company that contracted to build a grain shed storage building in Nebraska, and it's one of those buildings with half circles, almost like a Quonset hut from World War II, made out of corrugated, but this was not corrugated, it had steel trusses and then sort of a cloth material going over it. Not a huge building, but a good-sized building. Upon its first filling with grain, with corn, it collapsed in a rather dramatic fashion. No one was injured, but the building was substantially damaged and so was some of the crop. We immediately were notified of that by AGP, the owner of the building that contracted with the general contractor, Cherrytree. We notified the insurance company, Selective, immediately of the event and asked them to investigate it and gave them notice of the claim, the claim being that AGP made a formal claim and demand against us to resolve this matter. They asserted a legal liability against us and wanted it resolved. They wanted it resolved soon, and we told that to Selective that AGP needed it to be a building in the grain store business. At issue before the court is the policy language set forth in Selective's policy. This is an ISO Properties Standard Policy that was issued in 2006, came out in 2006 by copyright, ISO Properties Inc., as stated on the first page of the policy, which is When we were negotiating with Selective before settling with AGP, the AGP claim, AGP never raised the issue that's before this court, never said that they would not cover this matter and pay for the settlement or reimburse Cherrytree for the settlement because there  They did raise other policy defenses in successive reservation of rights letters culminating in a final decline letter, declining coverage letter, and in none of those multiple letters was the issue before this court or the issue they prevailed on in the trial court raised. The language in this policy is unique, and there are words in the policy that are specially defined by the expressed terms of the policy, in particular, the very word at question in this case, or the applicability of which is at issue in this case, and that is the word suit, and the policy says that words or phrases that appear in quotation marks have special meaning. See our definition section. And sure enough, the word suit is used in quotation marks. It's one of those specially defined special meaning words set forth in the definition section. And this is important because this insuring agreement had two separate provisions, what's usually called, referred to as the indemnity provision, and then a second provision, a The word suit does not appear in the first sentence anywhere. The word suit, as specially defined in this policy, does not appear in the indemnification provision. The indemnification provision specifically says we will pay those sums if the insured becomes legally obligated to pay his damages because of bodily injury, property damage, or property damage to which this insurance applies, period. The word suit's not there at all. In the next sentence, in the second coverage purchased, that is the duty to defend coverage that was purchased in this case by Cherry Tree, it says we will have the right and duty to defend the insured against any suit seeking those damages, and that those damages refers to bodily injury or property damages to which this insurance applies. What's important here is that, as I mentioned, suit is specially defined, and it is specially defined in contrast to the first sentence which says that we will be obligated to pay or when the insured becomes legally obligated to pay damages, the word suit is defined as not a legal obligation at all, but as mere allegations, particularly, specifically, definition number 18, suit, in quotation marks, means a civil proceeding in which damages because of bodily injury, property damage, or personal advertising injury to which this insurance applies are alleged. Suit, that provision goes on, the definition goes on to say suit includes, colon, an arbitration proceeding in what such damages are claimed and to which the insured must submit or does submit with our consent, and it goes on, or B, any other alternative dispute resolution proceeding in which such damages are claimed. So the word suit, as specifically and specially defined in this policy and as set forth in the second sentence of the coverage provision, is not, expressly not, a legal obligation to pay damages. Yes, sir. So what damages did this policy cover? Property damage, your honor. That's the issue right now. Property damage is not a specially defined term. The building that fell down? The damage to the structure itself and the damage to the corn. The structure itself is the structure your client built, right? Well, our subcontractor's built, yes. Okay. Well, the law is pretty clear that that's not covered, that they're not guaranteeing the work, and in fact, in your amended complaint, didn't you say that we're, they should have paid us for, that we're trying to recover from selective amounts that were due under the performance bonds? That's one of the allegations. And by, excuse me, those two are mutually exclusive, aren't they? I mean, the performance bond is to make sure the work's done in a workmanlike manner. The CGL policy, the law's pretty clear, isn't it? The CGL policy does, while you're on the thing building, somebody drops a hammer and hits somebody on the head, or the building falls over and knocks down another building that they're not building, or falls on somebody's car, or what have you. But the thing you're building is, the CGL policy is not to guarantee your work and build it right if you build it wrong. See, isn't that the law? I disagree, because that goes on a policy-by-policy basis, and none of that's been before this court, none of that's before this court on this Rule 308, 304A finding, which was very specific. There's been no ruling on the summary judgment on this performance bond issue. There hasn't even been briefing in the court below, and the trial judge below specifically stayed any addressing of those issues after, until after this court rules, and then he would get back to them after this court rules. So that's respectfully not before the court, and it is very case-specific and policy-language specific. That's why we did not address it. This is an ISO policy, right? Yes, issued in 2006, John. Okay. And there's nothing unique? I mean, these policies are boilerplates, aren't they? No, they vary from time to time. This policy is a very unique policy. It's not at all like the other policies, not at all like the CARES policy in question, and not at all like the policy that was at issue when this court addressed and criticized the CARES decision as wrongly decided in the Silco decision, which then subsequently went up to the Supreme Court. The counterclaim that you referred to a moment ago where that language you referenced or paraphrased appears also goes on and specifically states that AGP put cherry tree on notice that intended to hold cherry tree responsible for the damages and losses it suffered due to the catastrophic failure and collapse of a flat-grain storage building in Sparefield, Nebraska. That's the claim by AGP. In our permanent offenses, we similarly say that cherry tree was legally obligated to pay those damages because of the assertion of the claim for damages made by AGP. In a nutshell, the questions you're asking, all important questions that will ultimately need to be resolved in the trial court after the stay is lifted, presumably after we have a decision here that gets us back to the trial court, we will address those issues. We will have a policy language analysis as to whether selectives' interpretation of that policy is correct, an application of the policy is correct, or whether it's not under the case law. And I respectfully submit that not only was it not briefed, so cherry tree has not had due process of law on those issues to date because it's not been briefed in the court below or in this court, but we could not brief that in this court without violating the court state order. And that's why we did not brief that issue and why we said in our brief that we were very surprised and taken aback, frankly, that selective chose to brief that or not brief it, fully cut and paste sections out of their summary judgment motion and present them to this court. What's the issue with this appeal? What you're appealing is the fact that trial judge dismissed this case because no suit had been filed. Yes. And so you're, if I understand correctly in this appeal, the debate is the duty to, or the obligation to indemnify, to pay some damages, should be considered differently than the duty to defend. And also it has different rules and no suit under your position is required with regard to the duty to indemnify. Is that your position? Yes. Under the specific policy language of this case, yes. And you in part rely on the cases from the Seventh Circuit interpreting Illinois law. Absolutely, Your Honor. Which draw that distinction in those cases. Yes. Which draw the distinction between the duty to indemnify being very different than the duty to defend and indicating that although there's contrary language and there's a footnote I think in one of those opinions. Footnote 5, I believe, Your Honor. Which goes into some detail why it's thought that some courts have been led astray with regard to the requirement of a lawsuit. Right. And it's referencing to specific language in that individual contract in that case, in the underlying case. Absolutely. That's why we've cited in particular the Keystone decision and the Sokol decision from the Seventh Circuit. And those were unanimous decisions by the Seventh Circuit Court of Appeals. The Keystone in particular by Judges Kennedy and Posner and the Sokol decision by Chief and specifically and flatly reject the notion that the duty to defend and the duty to indemnify are even co-related or co-extensive as... Well, that's pretty simple. I don't need the Seventh Circuit to tell us that. Those are two separate concepts. Your Honor. Okay. Let's stay with the narrow issue here and that's indemnification. Correct? Yes. And you're looking at the insurance agreement, the insuring agreement 1A, right? Yes. How does one become... How does an insurer become legally obligated to pay damages? There's various ways, Your Honor. Okay. And particularly for this case, vis-à-vis the suit language, a legal obligation to pay is something that is legally imposed upon by operation of law. For example, in the environmental cases we saw. I know it's not applicable here. But legally obligated as a matter of law, how does that occur? That can occur one of two ways. Through a suit, am I correct? Yes. Through a suit? Well, not through just a suit. Not through a suit as defined in this policy. Well, let's just go generically. Okay. Through a suit. Well, a suit that gets resolved by a decision or a verdict. I was just going to finish there. I'm sorry. Excuse me. It goes to judgment, right? Yes. That can be executed upon. Okay? Yes. Can one become legally obligated through agreement? Yes. Okay. Those are the only two, isn't it? Unless you want to talk about statutory and quasi-criminal activities. Right. But we're dealing with an insurance agreement here. Yes. Okay. But don't we have a simple situation here as where you voluntarily undertook to enter into an agreement that legally obligated you? No. Okay. This wasn't a voluntary undertaking whatsoever, Your Honor. There was a threat of a lawsuit, threat of a claim, a threat for damages, a formal claim made for damages saying that you are liable for this. Okay, so a threat takes you out of the voluntariness, correct? Yes. Okay. That's conceptually straight there. Okay. So under the threat, you undertook to agree to pay damages. Am I correct? Yes, in consultation with Selective Insurance Company, who we invited to participate, asked to investigate and determine their rights and duties under the policy and our rights and duties under the policy. So we didn't just go out there and willy-nilly deal with this ourselves. We immediately told Selective and gave them formal written notice that there was this formal claim against us for damages, and we asked them to cover it. And they never came back and said until after we settled the matter, and they knew the action was coming. Until after you legally obligated yourself. Yes. Okay. Absolutely. Well, formally legal obligated. I believe a legal obligation stems from the underlying facts that occurred in the accident, the relations between the parties. That's the first legal obligation. But the second, there was a formal demand, a legal demand for payment, which is the second legal obligation. It never crystallized into a lawsuit because they were able to mitigate damages, eliminate the cost of defense. Yeah, but we're back to very simple concepts. I'm a simple judge. We're back to the simple concepts that you resulted in a legal obligation, your negotiations. Yes, an arm's-length negotiations and a resolution. Okay. Absolutely. So we're really here simply as to whether that legal obligation that you fully participated in, and you're saying the insurer was notified, was given the opportunity to, but chose not to. Well, they participated behind the scenes. They didn't come forward and participate. They sent reservation of rights letters. I'll stay one minute. Thank you. Continue on. In essence, the construction that Selective seeks here, whereby the term suit is impliedly inserted into the first sentence where it does not appear at all, serves to contradict and make patently ambiguous the first sentence's duty to indemnify provision. Is this an argument made in the trial court? Yes. Yes, and to the extent that this court must interpret the policy as a whole and the words contained in the policy referring to the definition of suit is clearly appropriate. Would you agree that in the event the courts determine that the policy does not apply to these damages, that you're out of the court? I didn't hear your last part. If the courts determine that the policy doesn't apply to the damages here, that you're out of the court. In other words, if the policy doesn't cover these damages, only if that's determined gainset match, right? No, because we have affirmative defenses of waiver and estoppel, which would trump those, Your Honor, and we've pled those explicitly and factually. Even if there's no applicability. But I guess what I'm trying to understand is why this interlocutory appeal isn't a gigantic waste of everybody's time and why the whole thing wasn't resolved. In summary, Judge, it was a brief argument and what had been before we got where we are. I was not in the trial court representing anybody. I've been brought on on appeal, but I've read the transcripts very carefully, and Judge Bernabe heard arguments on both sides, and I wouldn't say he struggled with that exact concept, but he addressed that exact concept. He thought and determined explicitly that in the interest of justice, where he was looking at the case and where he thought the parties were going with this case, it would be best to get the input of this court to help him and to help the parties know where they stood going forward on the other affirmative defenses, the other exclusions that selective is claiming, as well as the entire case in terms of defenses and counterclaims, et cetera. And this was a linchpin issue is the way I read the judges. Do I understand this correctly, that the only issue that was fully briefed and presented to the trial court was the one that was decided that a suit had to be filed? That was debated between the two sides. The questions with regard to other kinds of damages being legally obligated, that hasn't been fully discussed at the trial level. Oh, no, the legal obligation, because that's part of the policy language as to whether suits are inserted or injected on that aspect. That's been discussed, yes. But that's the sole basis for this judge's decision was, does the suit requirement in sentence two, coverage on duty to defend, can that get granted or is it required for there to be an indemnity payment at all? He followed Karras, which we think is an apposite. I'd ask that you reverse the trial court. I'd ask that you follow your prior decision in Silco and the Arizona decision in Desert Mountain Properties with his right on point. And I suggest that the Keystone decision in particular and the 7th Circuit Court of Appeals have a very important apropos discussion that can aid us all in our analysis of this. And I thank you very much. Okay, thank you, Mr. Stander. You'll have time in reply. Thank you. Mr. O'Gallagher, you may respond. Good afternoon, Judge. May it please the court, counsel. My name is Brian O'Gallagher. I do represent Selective Insurance Company. And there are just two topics I'm going to try to hopefully get through and discuss any questions your court has. The first topic does relate to the proper interpretation of the insuring agreement in the CGL coverage form and whether or not it requires a suit to trigger a duty to indemnify. That was briefed and argued in the format of the motion to dismiss the counterclaim. I do think, though, we need to talk about the performance bond issue as well, Judge, because what happened was the circuit court judge determined there was no legal obligation to pay in the absence of a lawsuit following Karras. And you can agree or disagree with that, but that's what the circuit court determined. In the motion to reconsider, Cherry Tree argued there was a legal obligation to pay the amounts in question because if they had not settled this dispute, the property owner, AGP, would have submitted a claim on the performance bond. After the performance bond paid out, Cherry Tree would be obligated to reimburse the construction surety for the amounts paid out in the performance bond. So the performance bond issue was injected into the proceedings because it was the method Cherry Tree chose to argue that it had a legal obligation to pay. So the two arguments are bound up. The two issues are before you properly. It was on the motion to reconsider that essentially Cherry Tree, not essentially, I quote the sections in my brief, went to Judge Burnaby and said, no, you're wrong. We don't need a suit here. We were legally obligated to pay. If we hadn't settled these claims with AGP, they would have filed a claim under the performance bonds and we would have had to pay our construction surety. That is the explanation Cherry Tree offered the circuit court for why they were legally obligated to pay in the absence of the lawsuit. And I do submit that that, independent of how we come down on Karras and whether or not a suit is required in all situations, that is not a suitable basis to find there was a legal obligation to pay in this case because as I cite in my brief and as the court points out, it is absolutely unquestionable in Illinois coverage law that amounts due under a performance bond, whatever they may be, they are not covered under a CGL policy. They're mutually exclusive, aren't they? Correct. The performance bond guarantees the suitability of the insured's work. That, by the occurrence requirement and the business risk exclusions, is excluded from the CGL policy. This is Elgin. This is Falls. This is Monticello. This is Stone Ridge. These concepts get reiterated every several years by the appellate courts and I think it's very relevant here because when you look at the case law that we focused on is Karras and Central Light. Well, again, recognizing that this court has already expressed its agreement with Karras, what Karras and Central Light were both analyzing was this legal obligation to pay question in the absence of the lawsuit. Is there a legal obligation to pay in the absence of the lawsuit? Karras said under a CGL policy, no. Period. Right line rule, no suit, no indemnity obligation. Central Light, looking at that ruling, said not so fast. There's a gray area here. But Central Light was looking at different types of insurance policies that included no duty to defend. But the criticism of Karras from Central Light was that. I submit they were talking about different types of policies. So Karras still, I say in my brief, I maintain Karras is still good law because it was distinguished and not overturned by the Supreme Court in Central Light, too. But what they were talking about was is there a legal obligation to pay in the absence of a lawsuit when the insurer is being held liable under the federal and state environmental statutes that don't require the filing of a suit, when the coercive power of the state is being employed to force the property owner to incur expense to investigate and clean up its own property without the need for a lawsuit by an adjoining landowner. And the court, you know, I maintain Karras got it right. But there is certainly some merit to the point that in that unique situation of CERCLA and the Illinois EPA where the government can start proceedings without initiating a lawsuit and actually force the insurer to pay money, that the suit requirement is form over substance. But here we don't have that. Here we have a business dispute, the type of business dispute that happens over and over again. In the construction industry, we have a general contractor that has to obtain performance bonds  to equate a dissatisfied customer complaining about construction work and threatening to draw down on a performance bond. That was provided as part of the contract. With the situation that the insureds found themselves in Central Light where the government was telling a public utility, you've got to incur money to clean up pollution that occurred in the 40s. There's no comparison here. In one case, you can certainly see why the court determined there was a legal obligation to pay. In another case, this is certainly not run of the mill, and I'm not trying to minimize the significance. It is a very significant event for a company like Cherry Tree to be faced with this type of complaint from a customer. But it is not a CGL issue. It is a performance bond issue. Well, the 304A finding was about this judge's decision that a suit was required to have any obligation at all. Yes. I mean, that's pretty narrow. Well, it was narrow. And so what you're asking us to do is expand it to cover these other things. No, I'm not asking you to expand it because here's what Judge Burnaby did. I hope I'm pronouncing it right. He did a nice job on this case, and I don't mean to mispronounce his name. He really looked at the law in this area, and he concluded that Karras was the only reported Illinois court decision, Illinois appellate court decision, that addressed the issue for this court, which is in a standard CGL policy that includes a duty to defend and indemnify, is a suit required to trigger a duty to indemnify? And Karras said no. And Judge Burnaby said, OK, that's my situation. Karras still controls because central light is distinguishable, and they were not looking at CGL policies. They were looking at excess indemnity policies that had no duty to defend. So the logic of Karras was not applicable to central light, and Judge Burnaby determined correctly that the Supreme Court recognized that. The Supreme Court says, and I quote in my brief, the policy at issue here in central light is vastly different from the CGL policies at issue in Karras in cases like it. And we might agree that if there's no duty to defend, there can never be a duty to indemnify, if we had standard CGL policies, but we don't have that situation. So Judge Burnaby said, respectfully, all I need to do is look at Karras, say this is a CGL policy. There was no suit, ergo there's no duty to indemnify. So that was the ruling on the motion to dismiss. And that's what's up under 304A. But what happened is the motion to reconsider finding is up on 304A as well. They then filed a motion to reconsider. They filed amended affirmative defenses, and they argued to Judge Burnaby, you're wrong that there's no legal obligation to pay under Karras. You're wrong to follow Karras. But more generally, you're wrong about there being a legal obligation to pay within the insuring agreement because we had to pay it, because we had to settle this claim or face exposure on the bond claim. That's why both issues are before you, because they're appealing not just the judge's initial ruling, but they're also appealing his denial of the motion to reconsider. And the denial of the motion to reconsider is where they made this argument. What did the judge say about that? The judge went back and said, I've looked at the cases again, I've looked at my ruling again, and with all due respect to the Seventh Circuit in the Keystone opinion, I think I got it right. And he said something self-deprecating that I recognize. I'm in Bureau County, and it's not for me necessarily to tell. But look, I think he got it right. But my point is he never saw the need to go past Karras. But to reverse his ruling, you do need to go past Karras, because even if you disagree with Karras, you still, for their counterclaim to go forward, they have to allege a legal obligation. My question is more direct. My question is, when there was a motion to reconsider, he did not amend or clarify to go to this other point. He stood by his previous ruling that no suit, no identity. That's correct. That's what he's ruled. All right. But in this case, we're not deciding under the policy whether a suit is always required. The issue before us is whether a suit was required under the facts of this case and this policy, not some generic large-world look. A policy like this is a suit necessarily and always required. And here, in the pleadings, I mean, Cherry Tree's basic position was, look, we had to settle, because if we didn't, they would have made a claim against the surety, the performance bond, and then we would have had to pay them. That's why we had to do it, which is legally virtually an admission that if the surety was going to pay, then it is not a loss covered under CGL. It's a performance issue and not a general liability issue. Yes, Judge, and we've quoted they did it in two places. They did it in their amended affirmative sentences, which they filed. And they said, and I'm quoting, throughout Selective's denial of coverage, Selective was aware Cherry Tree was attempting to settle the matter with AGP to avoid execution on performance bonds. That's an allegation that they filed in court. The next allegation. Should a claim have been made on the performance bonds, among other obligations, rights, and duties, Cherry Tree likely would have been obligated to indemnify its surety for any payment made in its behalf under the general indemnity agreement. Now, I share your characterization. I think it's an appropriate one. I think that's an admission. But I take it back to the issue that Judge Burnaby did decide, which is he focused on the insuring agreement, which is we, the carrier, will pay those sums the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We have the right and duty to defend the insured against any suit seeking those damages. In the briefs, we talk a lot about what that means, and then we focus on CARES and Central Light. But I think it was your question, Judge Holdren. How do they get the legally obligated to pay? The only explanation in the record for why they're legally obligated to pay is a performance bond. So I submit the court should not reverse, regardless of how it feels about CARES. I think CARES has properly decided. Judge Burnaby just, I don't know that he passed judgment about CARES. He just determined on his review of the case law it was the only controlling case out there. I think he was right about that, too. But however you come down on the CARES question, we are not talking about environmental liability here. We're talking about a situation where the party asserting the breach of contract action has admitted they're trying to collect, in the breach of contract action, amounts they would have been liable for under a performance bond. If you look at the quote from Stonebridge, that's exactly what Illinois courts have said they can't do because that's unfair to the CGL carrier. Because the surety can seek recourse against the contractor for the defective work. The CGL carrier cannot. Do you agree that's beyond the 304A request? No, I don't think that's beyond the 304A request, Judge, because the 304A request is saying reverse his ruling dismissing the counterclaim with prejudice. That was a basis for his ruling. Yes, but, Judge, this is an independent basis to uphold the dismissal of the counterclaim with prejudice. And I think it's compelling, and I think it's very significant. So your opponent says that all those matters weren't always fully briefed. They were not argued in front of the trial court, correct? He says that, but the motion to reconsider was fully briefed, and I made the point that they just admitted they're pressing an uncovered claim in my response to their motion to reconsider. That is absolutely in the record. That was briefed. Now, I'll be candid with you. The trial court judge didn't need to go there to get to his ruling. But, again, to reverse them, you have to find there's a basis that we were legally obligated to pay. I'm sorry, that the insurer was legally obligated to pay within the meaning of the insuring agreement, and you can't do that on this record. So it's a confusing procedural place we're in, but there's no reversal here, or reversal would be inappropriate here given what's contained in the record. I'll quit talking. I've got to sit down. I realize that. I made some arguments about, or I pointed out some arguments I believed were waived because they weren't presented in the trial court, and I don't want to go through chapter and verse. But in response to that, in the reply, counsel pointed out two of the arguments and said, as far as relying on out-of-state cases and public policy arguments, they're in the record. Well, I checked the record site. He's talking about some remarks that were made on the hearing on the motion to reconsider. One was actually, one remark, the public policy remark, was made in connection with the motion for 304A finding. Respectfully, I don't think that's appropriate. I think there is about a good chunk of his brief, and I've laid it out in mine, that is asserting arguments that were never asserted in the trial court, and I just want to make that point because I didn't have a chance to reply to his reply, obviously. But unless there's any other questions, I'll sit down. I believe there are. Thank you, Mr. O'Gallagher. Mr. Standa, you may reply. Thank you, Your Honor. First of all, in light of your questions, Your Honor, on the performance bond issue that is not jurisdictional before this court, but nonetheless, we have concern to you. Let me suggest it is because we can affirm the trial court's dismissal for any reason apparent, correct? Not under 304A. We specifically addressed that in our brief. It's a specific question. A 304A is not a specific question. A 304A is that you're asking, he dismissed the case, you're taking an interlocutory appeal, a 308 or something like that. This isn't a certified question case, is it? It's a 304A. And that is a trial court error in dismissing your plea. And that can be affirmed for any reason apparent in the record. Well, then you need to read the whole record because counsel is mischaracterizing our damages claim in the trial court as set forth explicitly in our affirmative defenses and in our counterclaim. It's not just the claim under the performance bond that would have been executed against us. It's much more than that. It's specific damages to AGP's property, including AGP's grain that was damaged and including AGP's aeration conveyor and electrical systems, which were all obtained and purchased by AGP and put in that building in which were damaged. That's it. The record is the answer to defenses and counterclaim, which is at C354, and the references I was just making are in paragraph 15 under statement of the case. Well, would you agree that that property would not have been recoverable from the surety? That damages to those properties, you wouldn't have been able to recover from the surety? That's my point. It's covered under this policy with selective. That's why they can't win on this summary judgment motion because our legal obligation to pay didn't come within the coverage of any performance bond or any payment bond. They were damages to AGP's property that were in that building that AGP put in that building when we worked it, and we specifically alleged that. Where was the gun to your head to settle that part of it? Pardon me? What was the pressure to settle any part that wasn't covered under a surety bond? AGP made a claim against us, a formal claim for damages, saying because of you all of this is ruined and we've suffered damages and we want you to make us whole, and we specifically prepped that. Paragraph 17, the same document I was just reading for you, AGP put cherry tree on notice that it intended to hold cherry tree responsible for the damages it lost and losses it suffered due to the catastrophic failure of the grain storage building that cherry tree was legally obligated to pay. And again, as I said, as it specifically pled in the counterclaim and our affirmative defenses, and the defenses are at C580, those were all damages to the property including the grain stored there, the aeration conveyor and electrical systems, all of which were purchased or obtained by AGP directly and put into that building. Those were ruined too. So now on a case, on an issue that's not before this court under Rule 304A that was stayed, expressly stayed because we asked for it to be stayed, and Selecta said we don't want this stayed, and the judge in his wisdom in making his 304A finding that same day and that same hearing said, I'm going to stay the summary judgment motion. I'm not going to have cherry tree brief it, so it wasn't briefed. We never submitted a brief in opposition to the summary judgment motion, never. It's not in the record because it wasn't ever done, and there was never oral argument on any aspect of the summary judgment motion. It's not in the record and the transcripts are before you. Our Supreme Court held in Silco that in the liability industry when an insured admits liability for an injury, and that's what happened here, Macon, general contractor's cherry tree, knew and admitted that AGP's claim against them was valid. The court goes on to say, in that situation, funds are routinely paid to injured parties in settlement of claims without the necessity of a lawsuit. The funds paid to resolve such claims are generally understood as damages in the usual and ordinary sense of the word. That's Central Illinois Light, 213 L. 2nd at 161, 162. Keras is clearly not on all fours in various respects. The Desert Mountain Properties case is. The California Powerline case that they cite is clearly not, although there's other cases other than Desert Mountain Properties are all environmental cases, circle cases, including the California case. The Arizona decision in the Desert Mountain Properties presented a settlement of a private construction dispute and is factually essentially on all fours with the case now before this court, holding that there was no need for a suit, that the contractor could go out and settle all of those claims for property damage. Once again, I ask that the court be reversed, trial court be reversed, and the case be remanded for further proceedings on all issues, including the summary judgment motion, among other things, as the court and the parties may decide below. Thank you, Your Honor, for listening. Thank you, Mr. Standa. Thank you, Counsel Bowles, for your fine arguments in this matter this afternoon. You will be taken under advisement. A written disposition shall issue. The court will stand in recess subject to call.